(Decided 9th April, 1891.)

---

WILLIAM E. McLANE *vs.* EVAN N. HOBBS, Officer of Registration of Election District. No. 2, and. W. IRVING PARSONS, Clerk of the Circuit Court. for Frederick County.

*Registration and Qualification of Voters—Act of 1890, ch. 573, sec. 14.*

In the month of March, 1888, a former resident of Frederick County, but then a resident of Washington City, returned to his original home in Frederick, bringing with him his wife and children, and built a house, and began house-keeping and lived and resided there after that date, except going to Washington every Monday morning to attend to his trade, and returning to his home every Saturday evening. He never applied for registration after his return to Frederick until the October sitting, 1890, and had not voted there for the last five or ten years, and did not make either of the affidavits required by section 14 of the Act of 1890, chapter 573. HELD :

McLane *vs.* Hobbs and Parsons.

1st  That the only fact and circumstance tending to show that he was not a resident of Frederick County,—that he went to Washington every Monday morning,—was rebutted by the fact that he returned to his "actual home" every Saturday evening.

2nd.  That having acquired a residence in the State prior to the passage of the Act of 1890, and continued said residence to the time of his application to the officer for registration, the affidavit required by the Act of 1890 was not a condition precedent to his right to registration.

APPEAL from the Circuit Court for Frederick County.

The case is stated in the opinion of the Court.

The cause was submitted on brief for the appellant, to ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*William H. Purnell, Jr.,* and *Frank C. Norwood,* for the appellant.

One's domicile is "where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Jacobs on Domicile, sec.* 65; *Phillimore on Domicile,* 11.

"A person's residence is the place of his domicile, or the place where his habitation is fixed, without any present intention of removing therefrom." *Cooley on Constitutional Limitations,* 754.

Domicile or residence is a matter of intention deducible from facts surrounding the case.  As in the case of a married man "one of the most usual and cogent *indicia* of his domicile is the dwelling-place of his wife and family." *Jacobs on Domicile, sec.* 401, *et seq.*  So "when a person goes to a new place and there buys land and erects for himself and occupies a dwelling-house." *Ibid, sec.* 414.

"The residence of the wife (and *a fortiori* of the wife and family) is at least *prima facie* evidence of the domi-

cile of the husband, and in the absence of proof to the contrary is to be deemed conclusive." *Ibid, sec.* 402; *Story's Conflict of Laws, sec.* 46.

The only circumstance showing the slightest evidence "to the contrary" is that appellant goes to Washington every Monday morning, but this cannot be taken against him because he goes "with the intention of returning" every Saturday evening. *McCrary on Elections, sec.* 62; *Harbaugh vs. Cicott,* 33 *Michigan,* 241; *Putnam vs. Johnson, et al.,* 10 *Mass.,* 502; *People vs. Holden,* 28 *Cal.,* 124.

In the foregoing authorities the terms "residence" and "domicile" are used synonymously, but they have not been so held in Maryland. Here the meaning of the word "residence," as it is used in section 1, of Article 1 of the Constitution is held to be "one's actual home, in the sense of having no other home, whether he intends to reside there permanently or for a definite or indefinite length of time." *Shaeffer and others vs. Gilbert,* 73 *Md.,* 66; See also *Opinion of Chief Justice* ALVEY *in Registration Cases at Hagerstown, reported in the Baltimore Sun of the* 30*th of October,* 1890.

Though "domicile" and "residence" may differ in many cases, as applied to the facts of this case, *domicile* means all that is meant by *residence,* and more; therefore, the facts which have proven "*domicile*" a fortiori prove "*residence.*"

As to the affidavit: Assuming that the appellant became a "resident" of the State and county in March, 1888, his residence has continued until the present time because the same circumstances surround him. The Act of 1890 made no change in the meaning of the word "residence," but only provided a way—which became the only way—to prove the intention to return in the case of those who "vacate or remove from the place of their actual abode, domicile, dwelling-place or habitation within this

McLane *vs.* Hobbs and Parsons.

State and take a domicile, dwelling-place, abode or habitation out of the State." Therefore, since residence within this State has never been abandoned, nor residence taken elsewhere, there was no necessity for an affidavit under the Act of 1890, nor in fact could any have been taken.

No appearance for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This appeal is from the rulings of the Circuit Court for Frederick County, on an appeal of the appellant from the refusal of the appellee, Hobbs, to register his name as a qualified voter of District No. 2, of Frederick County, which includes Frederick City. The facts of the case set out in the record are these, the appellant being the only witness. He testified that he was born in election district number two, (Frederick City,) Frederick County, but removed to Washington City, in the District of Columbia about the year 1870, where he married, went to house-keeping and worked at his trade, that of a bricklayer: that he continued to reside in said city until March, 1888, when he removed back to the election district aforesaid in Frederick County, Maryland, bringing with him his wife and children; that he built and owns the house, in which he lives, and has continued to occupy it with his family since his removal to the county in 1888; that not being able to secure work in his specialty, that of bricklaying, in Frederick, he has continued his work in Washington City, where he goes every Monday morning, but returns to his home in Frederick, every Saturday evening, and that he has continued to do this since March, 1888. The proof further shows that the appellant never applied for registration since his return to Frederick, until the October sitting 1890, and had not voted there for the last five or ten years,

and did not make either of the affidavits required by section 14, of chapter 573, of the Acts of 1890.

These being the undisputed facts of the case, the following prayer was offered by the petitioner which was rejected at the hearing by a divided Court: The petitioner, by his counsel, prays the Court to rule as a matter of law, upon the undisputed facts offered in evidence, that the said petitioner is a qualified voter, and entitled to registration as a qualified voter in election district number two of Frederick County. And it is upon the ruling of the Court in rejecting this prayer and the ruling dismissing the petition, that this appeal is based. The only question, then presented by the appeal is, had the appellant acquired such a residence in the State of Maryland, and in the election district of Frederick County, where he applied for registration, as to entitle him to be registered as a qualified voter? We are of opinion that under the facts of this case, the Court committed an error in rejecting the prayer offered on the part of the appellant, and in dismissing his petition. The Constitution of this State, section 1, of Art. 1, provides: That every male citizen of the United States of the age of twenty-one years or upwards, who has been a resident of the State for one year, and of the Legislative District of Baltimore City, or of the county in which he may offer to vote, for six months next preceding the election, shall be entitled to vote in the ward or election district in which he resides. And in the recent case of *Shaeffer, et al. vs. Gilbert,* 73 *Md.,* 66, in defining the meaning of residence, and what is necessary to constitute it, as used in our Constitution, this Court said: "It does not mean one's permanent place of abode, where he intends to live all his days, or for an indefinite or unlimited time; nor does it mean one's residence for a temporary purpose, with the intention of returning to his former residence when that purpose shall have been

accomplished, but means, as we understand it, one's *actual home*, in the sense of having no other home, whether he intends to reside there permanently or for a definite or indefinite length of time. As in domicile one's original residence, is the residence of his father at the time of his birth, but when he reaches the age of twenty-one years, being *sui juris*, he may abandon his original residence and acquire a new residence. And to acquire such residence, that is, residence by choice, one must remove to this State, or being an actual resident of the State, he must remove from one county to another, with the *bona fide* intention of abandoning his former place of residence, and of making this State, or the county to which he removes, his actual home, for a definite or an indefinite period of time; and if with such intention he continues to reside in the State or in the county to which he has removed, for the length of time prescribed by the Constitution, he is entitled to be registered as a voter."

Now it clearly appears from the evidence in this case, that the residence of the appellant was in Frederick County, up to the year 1870, when he moved to Washington City, there married, began house-keeping, and worked at his trade until the last mentioned date. He then lost his residence in Maryland, and acquired one in Washington City. If a person leaves this State and removes to another, with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it becomes his place of domicile, notwithstanding he may entertain a floating intention to return at some future period. *Ringgold, et al. vs. Barley,* 5 *Md.,* 186. But sometime in the month of March in the year 1888, the appellant returns to his original home in Frederick, bringing with him his wife and children, builds a house, and begins house-keeping, and has lived and resided there since that date, except going to Washington every Monday morning to attend his trade, and

returning to his home every Saturday evening. The only fact and circumstance tending then to show that he is not a resident of Frederick County, is that he goes to Washington every Monday, and this we think is rebutted by the fact that he returns to his "actual home" every Saturday evening. His absence was always with the intention of returning, and there was no fact to show that he had any present intention of removing from his Frederick home.

Under this view of the case, we do not think that the affidavit required by the Act of 1890, was a condition precedent to the appellant's right to registration. He had acquired a residence in the State prior to the passage of the Act, and said residence continued to the time of his application to the officer for registration. The order of the Court will therefore be reversed, and the case remanded to the end that the appellant's name be placed on the registration list.

*Order reversed.*

(Decided 9th April, 1891.)